The next case for oral argument is appeal number 25-1883, Tire Town Auto v. Wood County. Good morning, Mr. Olson. Good morning. May it please the court, I'm Jeff Olson. I'm here for Tire Town. Property interest jurisprudence is going down two separate and diverging paths. One is the path the county would like this court to take. At the end of that path is a rule that says only governmental pronouncements that can be enforced in state court under state law create property interests that the Due Process Clause protects with a guarantee of fair procedure. The other is the path where when the government says if you follow these rules you can stay on the towing rotation, you don't have to be a constitutional law professor to figure out whether you are guaranteed fair procedures if you are accused of a violation. Which path would the people who wrote and ratified the 14th Amendment want the courts to take? I submit they would want the courts to take the path where you don't have to be a constitutional law expert to decide whether to invest in a new tow truck to handle the incremental towing rotation business. There is plenty of authority for this second path. Roth, the Fountainhead of Property Interest Jurisprudence, after all said that property interests come from... Where is Tire Town anchoring its property right? Excuse me? Where is Tire Town anchoring its property right? In the minimum standards that is issued by the county to all the towing companies. So basically when we're looking at the dispatch rotation list. Yes. And so the property interest is found within the rotation list. It's the whole document that sets forth the rules for participating in the towing list, not just the list of participants, but the whole minimum standards. Yes. Okay. How is that different from an employer who employs his employees at will, but also sets out rules and expectations and minimum qualifications? In Wisconsin, at least, an employee handbook that sets forth rules and expectations can have contractual effect, but in this case, we don't think that there is some kind of clear disclaimer that these are intended to be binding rules. At one point, the minimum standards say this is not a contract. In the very next paragraph or two, they say this is an agreement. You shouldn't have to be a legal scholar to read these rules that are written in specific and objective terms and say, I want to be on the towing rotation. Your argument is that this is a contract and that the property right comes from the contract? We're not contending that there's a contract. We're contending that there doesn't have to be a contract under case law like Roth, like Rock River, like Vail, where this court has said. So you're suggesting that this policy has the force of law? Yes. If force of law is read correctly, and it doesn't mean something that you can go into state court and enforce, but it just means what it means in the context of, say, Monell jurisprudence, where a custom can have the force of law just the way the government routinely does things. The courts refer to us force of law. And we think that is the answer to the North Lake case. Are you still relying on your argument that Wisconsin's governmental immunity jurisprudence provides for this? You seem to have backed off of that in your reply. No, we're not. We don't think it's dispositive, but we think it's persuasive that force of law can be read broadly and doesn't have to mean something you can take into state court, file a lawsuit, and enforce in state court. If it doesn't mean that, what do you think it means? I think it means the way the government routinely does things. That's, I think, what it means in the Monell jurisprudence. And that's what makes sense, that harmonizes the due process jurisprudence among all the cases that say property interest doesn't have to be a contract. Monell doesn't give you any property rights, though. Excuse me? Monell doesn't define property rights. No, it's not about property rights. It's a way of looking at the meaning of the term force of law. I'm sorry. Go ahead. Why doesn't the discretion given to the county in the policy, I'm going to call it the call-out list, the policy, I'm talking about the entire policy. Why does that foreclosure argument that a property interest exists because of the discretion that the dispatch manager is given within the policy? We don't think there's discretion in the policy. The provisions that govern the conduct of the tow truck companies are not written in discretionary terms. They're saying that if you violate this term, you may be taken off the policy, taken off the list. Now, I've been thinking about this question, and it might be a different case. If they were taken off the list for something that was not alleged to have violated one of the specific and objective terms of the minimum standards, like something we never got around to thinking about when we wrote the standards, your sister married the sheriff, so everything's going to have the appearance of impropriety. You're off the list. That might be different. I don't know. But here we're talking about a situation where the accusation was violation of one of the specific and objective standards in the policy that, in the words of the Vail case, for example, there was legitimate and reasonable reliance on a promise from the state. And the Vail case says legitimate and reasonable reliance on a promise from the state can be a property right protected under due process clause. What that tells us, in essence, is that even if you don't have a contract, a promissory estoppel sort of claim might work. But even in that claim, you need a promise. Where do you allege mutual understandings and promises here? I think the minimum standards read as a whole are a promise from Wood County that if the tow truck drivers, tow truck owners follow the rules, they will not be kicked off the list. Even though it specifically says that the dispatch center may withdraw the offer to any and all participants or applicants? Yes. How could that be a promise? There's no basis. They don't say you can withdraw for the following reasons. It just says you can withdraw the offer. Can you show us where you want us to direct our attention to, to where the promise is located in the policy? Well, why don't I find that while I'm listening to my opponent's argument and save the rest of my time and make that my first point in rebuttal. Thank you. All right. Ms. Tierney. Good morning. May it please the court. Danielle Tierney for Wood County. I want to first point out that there do appear to be now some concessions on some of the arguments that were made by Tigertown. I know there was a lot of briefing with regards to whether or not what we've all been calling the callout list, which is not actually the list itself, but the callout list, whether that's a contract. And what I'm hearing now is that they're no longer contending it's a contract. So I think that issue can be quickly resolved. I also wanted to note that Tigertown had seemed to abandon its arguments equating the basis for municipal liability to force of law. There wasn't anything in the reply brief about that. I'm hearing now that perhaps that's still an issue, so I'll address that. But similarly equating the force of law in state immunity jurisprudence to force of law under the creation of property rights. I would note, though, that this is a brand new novel argument. It's never been seen in any other cases. And the jurisprudence from this circuit and other circuits is very clear on what force of law is required in order to confer a property interest that is subject to constitutional protection. And force of law is not read to mean any act of government. Cases have rejected the idea that there's a property interest simply because the government puts out a guideline or a policy. What's required and what has been required consistently through the case law is either statutory or regulatory authority to impose those guidelines. And that is 100% absolutely not present here. While there could potentially be an argument, as my opposing counsel has pointed out, that this could potentially, governmental actions could give rise to an immunity analysis, a ministerial duty, something like that under state law, that's just not simply how this court and other circuits evaluate whether or not there's a property interest at stake. Counsel has not pointed out, and there isn't anything in the record to suggest that the call-out list or the policy was created pursuant to any statutory authority or regulatory authority. It was not promulgated as an official act of the government. And therefore, under well-established law in this circuit and other circuits, it does not confer a property interest. I think the O'Hare case is directly on point, is dispositive of this, and does a great job of enumerating all of the other cases that have been found in other circuits, which have come down to the same analysis, same clear-cut analysis, that absent some kind of required statute or regulatory authority that imposes these guidelines, there is no property interest. I would also like to go back to the point that Judge Pryor had made regarding the discretionary language in the policy. Notwithstanding the fact that the policy was not created pursuant to a statutory authority, just looking at the language of the policy itself, it's clear that there's no entitlement to any benefits under that policy. And the discretion that is throughout that policy supports that argument. Specifically, subsection K talks about the voluntary participation of any parties. The towing companies have the abilities to participate at any time. They can stop participating at any time. And similarly, the dispatch center can withdraw its offer to allow these towing companies to participate at any time for any appropriate reason. The fact that this is not a for-cause requirement, it's not that they are entitled to be on the list but for a violation, means that it's not entitled to that same kind of entitlement analysis that we see in some of the other employment-type cases, where tenure is insured or termination but for cause, where some entitlements have been found there. I'd also note that I don't believe counsel has pointed to any similar entitlement-type case for the mutual understanding or mutual expectations in any cases outside of employment law. And I think that's because in the employment law situation, there is a distinction. This court and other courts have noted it's a special, unique relationship. The court has conferred certain protections. Yes, and then the Supreme Court told us what they thought about in the O'Hare-Northlake case, right? Well, they... On exemption from patronage contracting. But in that case, the Supreme Court did not address the due process or the property interest aspect. They were discussing the distinction between First Amendment protections of independent contractors and employees, which I would also like to note, I think there's kind of been reference in kind of the background of the briefing about this distinction between employees and independent contractors. But as we noted in our brief, there's actually no... And I know we're looking at the complaint. We're on a motion to dismiss. There's no allegations of an independent contractor relationship. And in fact, if you look at the allegations and the terms of the call-out policy, it's clear that there is no relationship between the county or the dispatch center and the towing companies. What the county and the dispatch center are doing is merely facilitating a contractual relationship between the people who need their cars towed and the towing companies. So whether or not they're an independent contractor or not would be requiring an advisory opinion from the court because there is no independent contractor status. Absent any direct indication of a property interest from established and recognized by Wisconsin law, this is a case that's... Well, we filed a motion to dismiss. Debt in the waters. There's no property interest for protection. And if there are no other questions, I would just ask that the district court... Or excuse me, that this court affirm the district court's dismissal. Thank you. Mr. Olson, you have a little bit of time left. Thank you, Judge. Prior to answering your question about where the property interest comes from in the minimum standards, on page A18 of the appendix in Section 1, they say, quote, eligible companies will be placed on the Wood County Dispatch Center towing and recovery call-out list, end quote. Now, I thought I remembered this, but I didn't want to just rely on my memory when you asked about the language regarding removal. Judge Sainte-Eve, the language you asked about is the language in subsection of general policies, Part 3, subsection K on page A20 of the appendix. The bottom paragraph says all parties are free to participate or not participate in this policy as they deem appropriate. You asked about the next sentence. Any firm may withdraw their participation at any time, and the dispatch center may withdraw the offer to any and all participants and or applicants at any time. But it doesn't stop there. It says for any appropriate reason. And that has to be read, I think, in conjunction with the list of appropriate reasons above that. Things like fees, charging excessive fees in subsection G, which is the reason my client was removed from the call-out list, and upon which they could have had a hearing, and my client still believes he could win that hearing if he gets it. Thank you. Thank you. Thanks to both counsel. The court will take the case under advisement.